No. 48 March 6, 2018 539

IN THE OREGON TAX COURT
REGULAR DIVISION

VESTA CORPORATION,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 5253)

Plaintiff (taxpayer) appealed from a Magistrate Division decision as to corporation excise tax. Taxpayer claimed a refund with a second amended return. Defendant (the department) paid the amount claimed on taxpayer's second amended return without audit or examination. Under ORS 305.270(8), having done so, the department was afforded additional time within which to assert a deficiency. Taxpayer argued that because the amount refunded was slightly greater than the amount of refund claimed, ORS 305.270(8) did not apply. Taxpayer argued any variation in amount refunded conclusively indicated an audit or examination of taxpayer's second amended return had occurred. The court concluded the record established the small excess refund was due to the failure of taxpayer to include in its claim a credit to which it was entitled and not due to an audit or examination. Accordingly, the assessment by the department was timely under ORS 305.270(8). Further, the assessment was valid because the second amended return was filed more than three years after the original due date for the tax return for the year, determined without regard to extensions. The court rejected taxpayer's argument that ORS 317.504 operated to extend the due date for its claim for refund to three years after the last day of the period of automatic extension. Rather, the due date for any refund of most amounts paid by taxpayer was three years after the date on which the original return of taxpayer was due, computed without regard to extensions.

Oral argument on cross-motions for partial summary judgment was held September 11, 2017, in the courtroom of the Oregon Tax Court, Salem.

John H. Gadon, Lane Powell PC, Portland, filed the motion and argued the cause for Plaintiff (taxpayer).

Darren Weirnick, Senior Assistant Attorney General, Department of Justice, Salem, filed the cross-motion and argued the cause for Defendant Department of Revenue (the department).

Decision for Defendant rendered March 6, 2018.

**HENRY C. BREITHAUPT, Senior Judge.**

## I.   INTRODUCTION

In this corporate excise tax case, questions exist as to the timeliness, or untimeliness, of actions of Plaintiff (taxpayer) and Defendant (the department). The parties have proceeded with cross-motions for partial summary judgment. The tax year in question is 2007.[1]

## II.   FACTS

Because this case requires careful application of specific facts to the governing statutory provisions, the facts relevant to each issue will be detailed in the Analysis portion of this order relating to that issue.

## III.   ISSUES

The issues in this case are:

(1)   Was the department's issuance of a notice of deficiency after the time periods set forth in ORS 314.415 nonetheless timely under ORS 305.270(8); and, if so,

(2)   Was the second amended return and claim for refund filed by taxpayer made within the time limitations of ORS 305.270(2) and ORS 314.415(2)?[2]

Other issues would arise if the answer to the first question is negative and the parties addressed those issues in their briefs and oral argument. However, as discussed below, the answer to the first question is positive.

## IV.   ANALYSIS

A.   *Was the department's notice of deficiency timely under ORS 305.270(8)?*

1.   *Refund of amount requested without audit or examination of refund claim*

---

[1] There appears to be some disagreement between the parties as to whether the 2008 year is also before the court. The court will address only the 2007 year. The parties are instructed to confer and advise the court if further proceedings are needed as to the 2008 year.

[2] Unless otherwise noted, the court's references to the Oregon Revised Statutes (ORS) are to the 2007 edition.

a. Was there an audit or examination of tax-payer's refund claim?

ORS 305.270(8) (subsection (8)) provides additional time to the department to examine or audit a refund claim after paying that refund.[3] However, subsection (8) only applies if the refund paid by the department was made "without examination or audit of the refund claim." The first question to be answered is whether that condition was satisfied in this case, and therefore that subsection (8) applies.

The stipulated facts on this question, together with the inferences the court does or does not draw from those facts, are as follows.

Taxpayer physically filed its Oregon return for the year in question no later than October 3, 2008. Although the due date for filing the return was April 15, 2008, taxpayer was entitled to an extension for filing. The extension permitted the return to be filed, without penalty exposure for late filing, up to and including October 15, 2008.

By reason of changes to its 2007 federal income tax return affecting Oregon tax liability, taxpayer filed a first amended Oregon return on July 21, 2010. This return showed an additional Oregon tax obligation upon which interest on that additional amount would be payable to the department. The principal amount of the additional payment, paid in July of 2010, was $11,603.00. In August 2010, taxpayer paid to the department the interest due on that principal amount, which was $1,157.81 (referred to here-after as "the missed credit correction amount").

No earlier than October 14 2011—and therefore more than three years after October 3, 2008, the latest date by which it had physically filed its original 2007 return—taxpayer filed a second amended Oregon return. The second

---

[3] ORS 305.270(8) provides:

"If the department refunds the amount requested as provided in subsection (3) of this section, without examination or audit of the refund claim, the department shall give notice of this to the claimant at the time of making the refund. Thereafter, the department shall have one year in which to examine or audit the refund claim, and send the notice of proposed adjustment provided for in subsection (3) of this section, in addition to any time permitted in ORS 314.410 or 314.415."

amended return made a claim for refund of prior payments made to the department. For purposes of this order, the second amended return will be referred to as the "claim for refund."

The claim for refund—that is, the amount taxpayer requested the department to pay back to it—was based on one change to its return. That change was a recalculation of the sales factor for apportionment of taxpayer's income to Oregon. That recalculation produced a reduced amount of Oregon tax due.[4]

The amount of refund claimed (hereafter referred to as the "sales factor refund claim amount") was calculated by subtracting from the amount of tax that taxpayer determined it owed, based on its amended position, the amount that taxpayer had previously paid to the department. However, and of great importance to this case, taxpayer's calculation of amounts previously paid to the department, found on line 8 of Schedule ES and line 33 of the claim for refund, did not take into account the payment by taxpayer of the missed credit correction amount of $1,157.81 made in August 2010.[5]

By reason of this miscalculation by taxpayer, the amount it requested in its claim for refund was less than the amount to which it was entitled. The difference, $1,157.81, bore no relationship to the law or facts that were the basis of the claim for refund—that is, the law or facts relating to the calculation of the sales factor for apportionment of income. The difference was produced entirely by taxpayer's mistake in not taking full credit for the payments taxpayer had made to the department prior to the filing of the claim for refund.

On January 23, 2012, the department issued to taxpayer a document (referred to as "the January 23 communication"). The January 23 communication comprised several pages of text and one check. The check was in the amount

---

[4] The propriety of this substantive claim is not at issue at this stage of the case.

[5] This fact was the subject of a stipulation of the parties at the last hearing held on this case.

of the sum of the sales factor refund claim amount and the missed credit correction amount. Stated differently, the department refunded to taxpayer the missed credit correction amount of $1,157.81, as well as the sales factor refund claim to which taxpayer was entitled in light of the tentative acceptance by the department of the only basis on which taxpayer based its claim for refund.

The January 23 communication consisted of:

(1) A cover page with the heading Notice of Proposed Adjustment and/or Distribution. This page began with the statement:

> "A *credit on your account has resulted in a refund.* The figures below show how we distributed your refund."

(Emphasis supplied.) The "figures below" on the cover page showed the amount of tax due as exactly the amount taxpayer had calculated to be due after giving effect to its position on the calculation of the sales factor. The cover page adjusted the amount of current payments as shown on the claim for refund upward by $1,157.81. It also stated that the "Proposed Refund or Credit" was an amount also greater, by $1,157.81, than the amount claimed by the taxpayer. Finally, the page showed a final check amount of $847,326.52. That amount was the total of the missed credit correction amount, the sales factor refund claim amount, and interest separately computed on those amounts.

(2) A page with the title Explanation of Adjustments Made. Only one "adjustment" was discussed, as follows:

> "The amount of prepayments you claimed on your amended return is incorrect. Prepayments on an amended return must equal net tax either from your original return or as previously adjusted. ORS 305.265."

It is a mathematical certainty, and a stipulated fact, that the "incorrect" amount of prepayment was precisely $1,157.81—a correction to the previously paid tax amount.

(3)   The check in the amount of $847,326.52.

(4)   Attached to the check, a page containing the following statement:

> "We have processed your amended Corporation Excise tax return and issued the requested refund without audit. ORS 305.270(8). Please see the enclosed notice for an explanation of changes made to your refund."

Everything in the record indicates that the "enclosed notice" referred to are the pages described in (1) and (2) above.

(5)   The communication also directed taxpayer to information on appeal rights.

On the first question to be answered, whether the department conducted an "examination or audit" of the refund claim, there is no issue of material fact raised by this record. The parties differ in their asserted conclusions from the record, but, as discussed below, no reasonable trier of fact could reach any conclusion other than that there was no "examination or audit of the refund claim."

The record in this case made by the department through uncontested declarations establishes that no examination or audit preceded the January 23 communication. The department did take into account numerical entries on the claim for refund. However, subsection (8) cannot logically be read to exclude facial review of a refund claim itself. Indeed, without such facial review, the department would not be able to determine what amount a taxpayer had claimed and, for purposes of subsection (8), in what amount a refund check should be drawn.

The facial review of taxpayer's refund claim, when compared with the department's own records, also revealed that taxpayer had not properly accounted for payments previously made to the department. The records of the department, and not any records of taxpayer, were the basis of this finding. That finding was arrived at without any question being posed to taxpayer or examination of any records of taxpayer. Taking into account only the information on the face of the refund claim and its own records, the department

refunded to taxpayer two amounts. Those two amounts were refunded in one check. The amount of the check was the sum of the amount taxpayer requested (the sales factor refund claim amount) and the missed credit correction amount.

The payment made by the department was not a function of either the legal or factual position underlying the claim for refund. The payment made by the department with the January 23 communication in excess of the amount requested by the taxpayer was solely a function of the department taking into account the payment of $1,157.81 made by taxpayer in August 2010 but not accounted for by taxpayer on the face of the claim for refund.

Taxpayer has submitted no declarations or other admissible evidence raising any question of fact regarding the foregoing conclusions. At most, taxpayer claims the benefit of an inference. Taxpayer asserts that because the amount of the check in the January 23 communication was different from the amount it requested in its claim for refund, there must have been an "examination or audit" of its claim for refund.

The statute in question contains no definition of either the term "audit" or "examination." *Webster's* defines "audit" as "a formal or official examination and verification of books of account." *Webster's Third New Int'l Dictionary* 143 (unabridged ed 2002).

*Webster's* defines "examination" as "the act or process of examining or state of being examined." *Webster's Third New Int'l Dictionary* 790 (unabridged ed 2002). The court then must consider what it means to "examine" something.

*Webster's* defines "examine" as "to test by an appropriate method," "to look over," to "inspect visually or by use of other senses (as for the determination of accuracy, propriety, or quality)." *Id.*

Further, other statutes provide context for determining what the terms in question mean. ORS 314.425 authorizes the department, for the purpose of ascertaining the correctness of any return, to "examine *** any books,

papers, records or memoranda bearing upon the matter required to be included in the return."

Subpoena power for the department is also specified, and the department may seek an order of this court to compel the production of the books and records. Logically, therefore, in any audit or examination, the items audited or examined are those of the person being audited or examined—that is, a taxpayer or, potentially, third parties. If the department consults its own payment records, no audit or examination is being conducted.[6]

It would also appear that there is little, if any, difference between an "audit" or "examination." The court does not understand taxpayer to argue that, if the department reads the claim for refund for the purpose of comparing information on the claim to the department's own records, the department has somehow "examined" or "audited" the claim. Any such reading is entirely illogical and without support. That being the case, the inference that taxpayer urges—additional dollars refunded necessarily means that an "audit or examination" occurred—is not a reasonable inference for purposes of Tax Court Rule (TCR) 47.

    b.   Did the department refund the amount requested?

There is no question of material fact as to this element. Neither party contests the facts about the amount of the check issued to taxpayer with the January 23 communication or the fact that the check was, in principal amount, greater than the amount requested by taxpayer. Nor is there any dispute that this greater principal amount was $1,157.81, being the amount of interest paid by taxpayer in August 2010 with respect to the additional tax shown on its first amended return. Finally, there is no dispute that the amount of $1,157.81 was not included on the claim for refund as a previous amount of tax paid.

---

[6] This is true at least with respect to whether a payment has been made and accounted for, which is the situation in this case. The court is not confronted with, and makes no determination on, a situation in which the department reviews information returns, such as W-2 forms, in its processing of a taxpayer's return.

Taxpayer asserts that in paying more than the amount requested in the refund claim, the department rendered subsection (8) inapplicable. The department observes that although the amount refunded is not precisely the amount requested, the amount refunded includes the amount requested and the statute therefore applies.

The court is presented with a question of law as to whether payment, in one check, of the amount requested, together with an unrelated amount to which taxpayer was entitled, renders subsection (8) inapplicable. For the following reasons, this court concludes that subsection (8) is applicable notwithstanding the amount of the check issued in this case.

To be sure, it is not the case that the issuance of a check in an amount greater than the amount requested in the refund claim is, in all cases, permitted without effect on the application of subsection (8). This conclusion follows from the context of subsection (8), namely the provisions of ORS 305.270(3) (subsection (3)). The parties have provided the court with relevant legislative history on subsection (3). That legislative history shows the legislature amended subsection (3), at least in part, in order to respond to a decision of this court, *Kent v. Dept. of Rev.*, 9 OTR 356 (1983). While that decision had nothing to do with subsection (8), it addressed a matter that can arise under subsection (8).[7]

The *Kent* case addressed what procedural protections were due to taxpayers in respect of an adjustment that resulted in a *reduction* of the amount of refund requested. Although the decision in *Kent* did not explicitly say so, the legislative history provided as to subsection (3) shows that the department read the decision as requiring the department to give to taxpayers a notice of proposed adjustment to a taxpayer filing a claim for refund even when the proposed adjustment was an *increase* in the refund over the amount claimed. Accordingly, the department proposed legislation that would explicitly say just that. The language, now found in subsection (3), provides that proposed adjustments that

---

[7] Further, as will be seen in the last section of this order, subsections (3) and (8) are parallel provisions in many ways.

trigger further procedural rights include not only decreases in amount of refund requested, but also include an increase in the amount requested. In either case, notice and a right to a hearing with the department are required prior to making the final adjustment.

There is at least one obvious instance when there is a need for application of such protections even to increases in the amount refunded. This is in cases where the department proposes to pay a refund in excess of the amount requested by a taxpayer, but the apparent increase results from the department denying a portion of the amount requested by the taxpayer while, at the same time, as a result of examination of the return, allowing to the taxpayer an unclaimed amount that more than offsets the reduction to the refund claim proposed by the department. In such an instance, as a matter of basic due process recognized in *Kent*, the taxpayer is entitled to know of the reduction to its claim, "camouflaged" by allowance of a positive adjustment. The taxpayer in that situation should be informed of and permitted to accept the positive adjustment that is proposed while also contesting the negative proposed adjustment.

The case before the court does not involve a claim by taxpayer that it was denied procedural protections. In fact, both in the January 23 communication and later communications, the department advised taxpayer of all proposed actions and advised taxpayer of its rights to contest those proposed actions. As to the January 23 communication, taxpayer did not ask for further explanation or hearing. Now, however, it claims that because, under subsection (3), proposed increases in claims for refund require procedural protections, any such increase must also be an event that renders subsection (8) inapplicable. In this argument taxpayer goes too far, without offering any authority for its position.

Subsection (8) does not directly concern itself with the procedural protections addressed in subsection (3). Subsection (8) merely, by cross-reference to subsection (3), incorporates those procedural protections. Rather, subsection (8), as discussed above, is substantively concerned only with whether an increase in the amount requested results

from an audit or examination. This substantive concern is easily derived from the fact that even if precisely the amount requested is refunded, subsection (8) will *not* apply *if* that action of the department occurs after an examination or audit. The decisive factor in cases of refund of the amount requested, or some greater amount, is whether an audit or examination has occurred prior to the refund payments. As discussed above, the court concludes that no reasonable trier of fact could find that there was any such audit or examination in this case.

In addition, as will now be discussed, under a proper reading of subsection (8), it is possible for there to be a payment of more than the amount requested. This can occur where the additional payment is unrelated to the substance of the refund claim and arises not out of an audit or examination, but rather out of obligations of the department to refund to taxpayers certain amounts held by the department—namely, amounts to which the department has no right. Such a payment, even when combined with an amount of refund requested, does not render subsection (8) inapplicable.

As observed in the discussion of the factual record in this case, the amount of the excess refund payment originated in the simple fact that taxpayer had, prior to its claim for refund, paid more to the department than it showed as prior payments on its refund claim. The department had more of taxpayer's money than taxpayer realized or claimed back.

The refund paid by the department was determined by completely accepting taxpayer's position on calculation of the sales factor—both as to the law and the facts asserted by taxpayer. The amount of tax determined by taxpayer as due back to it on that basis was also accepted by the department. The remaining step to calculate the amount to be paid as a refund was to compare the amended amount of tax due, as calculated by taxpayer, with prior payments made by taxpayer. At this step the department counted in prior payments that its records showed it had received, including the amount of $1,157.81 which taxpayer had failed to account for in the refund claim.

That amount had nothing to do with the law or facts that formed the basis of the claim for refund or any audit or examination of facts or law. It was simply a comparison of a prior payment amount on the claim with the prior payment amount contained in the department's records for this taxpayer. As stated in the January 23 communication:

> "A *credit on your account has resulted in a refund*. The figures below show how we distributed your refund."

(Emphasis supplied.) Finally, the amount of the correction was easily determined from the information included in the January 23 communication.

More importantly, having accepted the position of taxpayer as to calculation of the sales factor, the department concluded that it had on hand excess prior payments. Included in those was the amount of $1,157.81. As to that amount, not claimed by taxpayer, but excess nonetheless, the department was obligated by ORS 305.270(1) (subsection (1)) to pay that amount to the taxpayer. Subsection (1) provides:

> "If the amount of the tax shown as due on a report or return originally filed with the Department of Revenue with respect to a tax imposed under ORS chapter 118, 308, 308A, 310, 314, 316, 317, 318 or 321, or collected pursuant to ORS 305.620, or as corrected by the department, is less than the amount theretofore paid, *or if a person files a claim for refund* of any tax paid to the department under such laws within the period specified in subsection (2) of this section, *any excess tax paid shall be refunded by the department* with interest as provided in this section and ORS 314.415."

(Emphases added.)[8]

---

[8] ORS 314.415, to which ORS 305.270 makes reference, contains a similar provision. It states, in relevant part:

"If the Department of Revenue determines pursuant to ORS 305.270 that the amount of the tax due is less than the amount theretofore paid, the excess shall be refunded by the department[.]"

Subsection (2) of ORS 314.415 contemplates that the department must both "allow" and "make" a refund. The use of these two verbs indicates that the department has a duty to "make" a refund it discovers to exist as well as "allow" a refund affirmatively "claimed" by a taxpayer.

Subsection (1) has two parts, separated by the words "or if a person files a claim for refund." Each part involves an "excess tax paid."

The first part relates to situations not involving a claim for refund, while the second part addresses situations involving claims for refund. The first part does not appear to apply in this case because the original return filed did not show an excess of payments over taxpayer's calculated liability. (Such an excess could occur if, for example, estimated tax payments or other deposits made during a tax year exceeded the tax shown as due on a return.) Additionally, there does not appear to have been a correction made by the department to the original return filed in this case.

However, at the point that the department decides to make the payment of the refund without examination or audit—the second part of subsection (1)—the refund obligation of the department applies. The department is then, in fact, allowing the refund claim, albeit subject to what it may find out during the extended audit period. At that point the refund obligation of the department, in the words of subsection (1), is to pay out "any excess tax paid." When the department has temporarily accepted the claim for refund, the "excess tax paid" will be, *at least*, the amount requested by a taxpayer. However, subsection (1) does not limit the payment obligation of the department to the amount requested by a taxpayer. Rather, the department is obligated by the second part of subsection (1) to refund *any* "excess tax paid." In this case, that amount is obviously the difference between the amounts previously paid to the department for the year in question and the amount of tax due as shown in the claim for refund.

Subsection (1) required the department in this case to take into account more than the amount taxpayer claimed it should have paid using a recalculated sales apportionment factor. The department was required to take into account taxpayer's prior payments for the year 2007, as shown on the department's records, even though taxpayer had failed to accurately compute that amount. A review of the January 23 communication shows that is what the department did. It specifically stated that a credit on taxpayer's account had

been made, resulting in a refund. Having done that, the sub-traction of tax due from amounts previously paid yielded an "excess tax paid" amount composed of the sum of the amount claimed by taxpayer and the $1,157.81 payment made, but not accounted for, by taxpayer.

What the department did here was to comply with its obligations under subsection (1). It paid to taxpayer all "excess tax paid" determined as of the time of the refund claim and taking into account both the amount claimed and its own records of prior payments.[9] Having complied with the statutory provisions of subsection (1) and having engaged in no audit or examination, the department is not disqualified from having the benefit of subsection (8).

c.   Application of ORS 305.270(8): Is issuance of notice of deficiency allowed by subsection (8)?

The final argument of taxpayer is that even if other requirements of subsection (8) are satisfied, the assessment made is invalid because "the Department failed to comply with the procedure required by the statute."

Taxpayer's first assertion is that while subsection (8) allows the department, after any audit or examination, to give a "*notice of proposed adjustment* \* \* \* nothing in ORS 305.270(3) or (8) extends the statute of limitations for issu-ing a notice of deficiency."

Taxpayer admits that a one year extension of the statute of limitations is available to the department if it issues a notice of proposed adjustment. Accordingly, the premise of taxpayer's argument must be that the terms "notice of proposed adjustment" and "notice of deficiency" are mutually exclusive and that the one year extension applies only when a "notice of proposed adjustment" is issued.

Taxpayer cannot succeed with this argument if a notice of deficiency is a subset of the larger set of notices of proposed adjustment. For the reasons now discussed,

---

[9] The legislative history supplied by the parties, although addressing sub-section (3), shows a general concern of the legislature and the department to be prompt in refunding money due to taxpayers. This not only avoids interest expense, it also is what governments ought to do.

taxpayer's premise is incorrect. Within the context of sub-sections (3) and (8), a notice of deficiency is a subset of the larger set of notices of proposed adjustment.

In analyzing this point, some preliminary matters are relevant and now addressed.

> d.    Is there a deficiency in this case, of which notice may be given?

At the outset, it is important to note that, under Oregon law, a notice of deficiency is the beginning of an administrative process and not the end of that process. That is not the case under federal tax administration. However, in Oregon, a notice of deficiency merely sets out the position of the department that a deficiency exists. That position is then subject, at the election of the taxpayer, to administrative review, judicial review, or both, under ORS 305.265 or 305.270. The issuance of a notice of deficiency is an assertion of what the department thinks the facts and law produce. The administrative process occurs before the assertion is or is not converted into a final assessment of a deficiency.

Was there, in any case, a "deficiency" in the eyes of the department at the time the notice of deficiency was issued on September 26, 2012?[10] The general definition of the term "deficiency" is: an inadequate amount. *Webster's Third New Int'l Dictionary* 592 (unabridged ed 2002). While there is no statutory definition of deficiency, the department has promulgated a rule that defines the term. OAR 150-305-0194 provides, in part:

> "A deficiency is the amount by which the tax as correctly computed exceeds the tax, if any, reported by the taxpayer."

The rule has not been challenged by taxpayer here and is, in any case, well within the department's interpretive rulemaking authority.

Taxpayer, by first considering how subsection (3) operates, concludes that for a deficiency to exist, the department must be seeking a return of more than the amount claimed as a refund. Observing that the department did

---

[10] The focus here is on the notice sent in September of 2012 and not on the January 23 communication.

not, in this case, seek a return of more than the amount it had previously claimed as a refund, taxpayer argues that no deficiency existed. Accordingly, in the view of taxpayer, there was no basis for issuing a notice of deficiency.

Taxpayer's observations are correct, but only in cases to which subsection (3) applies. In those cases, cases where *no refund prior to audit has occurred*, audit or examination of a claim can lead to one of several conclusions and related actions:

(1)   The amount requested should be refunded. In that case, the amount requested is paid to the taxpayer.

(2)   An amount greater than that requested should be refunded. In that case, a proposed adjustment increasing the claim is made and may be paid to the taxpayer.[11]

(3)   Some amount less than the amount requested should be refunded. In that case, a proposed adjustment is made and may be paid to the taxpayer.

(4)   No amount should be refunded. In that case, a proposed adjustment is made.

(5)   Beyond there being no refund, review of the entire return supports the finding of a deficiency. In that case, a finding of a deficiency is made.

In all of the foregoing instances, except when the amount of refund is paid in full, a taxpayer is entitled to notice and a conference with the department. Following that conference, final action is taken. *See* ORS 305.270(4) and (5). Under subsection (5) if the refund is completely denied, a determination letter and notice of refund denial is to be issued. If the refund is increased or paid in part, a determination letter and payment of the appropriate amount is made. If a deficiency is determined, that amount is "assessed."

Although taxpayer recognizes that under subsection (8) a payment is made in advance of examination or audit, taxpayer fails to grapple with the significance of that

---

[11] This situation was specifically addressed in the legislative history provided to the court as to amendments to subsection (3) made by the 1985 legislature. (*See* Stipulated Exhibit 10.)

fact in construing the terms "adjustment" and "deficiency." When subsection (8) otherwise applies, as, for the reasons discussed above, it does in this case, the department first pays out to a taxpayer the amount requested in the claim. That payment is made on the *tentative* acceptance of the legal and factual basis that a taxpayer asserts governs. However that legal and factual basis has not yet been reviewed by the department. Nonetheless, the money in the hands of a taxpayer is exactly the money that would have been in its hands if it had originally filed its return on the basis it asserts in the refund claim.

Accordingly, when the department then audits or examines the claim, it can reach one of the following conclusions and related actions, numerically corresponding to the conclusions and actions set out above relating to operation of subsection (3):

(1)  The amount requested by a taxpayer was entirely justified. In that case, having already paid it out, the department obviously does not, in the words of subsection (3) "refund the amount requested." Rather, the department would take no further action.

(2)  An amount greater than the amount requested by a taxpayer should be refunded. In that case, a case contemplated by subsection (3) to which subsection (3) refers, the department would notify the taxpayer of this fact and make an extra payment to the taxpayer. The amount of the payment would be the amount by which the correct refund amount exceeded the amount already paid to the taxpayer by the department.

(3)  Some amount less than the amount already paid to a taxpayer, but not all of that previously paid amount is the correct amount of refund. In that case, having paid a greater amount to the taxpayer, a deficiency—"an inadequate amount"—exists; the department must then notify the taxpayer of that determination and notify the taxpayer that some of the money previously paid to the taxpayer should be returned to the department, subject to later administrative and judicial review.

(4)   The entire amount previously refunded was not due to
      a taxpayer. In that case, a deficiency—"an inadequate
      amount"—exists; indeed, the refund claim should have
      been denied and therefore the entire amount previ-
      ously paid to the taxpayer should be returned to the
      department, subject to later administrative and judi-
      cial review.

(5)   No amount should have been paid to a taxpayer previ-
      ously, and there is a further amount owed to the depart-
      ment. Here again "an inadequate amount," a deficiency,
      exists. In that case, subject to time limitations to be
      discussed below, the department is entitled to assert
      a deficiency even greater than the amount previously
      refunded.

The court outlines these parallel structures in the
operation of subsection (3) and subsection (8) to provide a
context for construing subsection (8). In addition, they show
the error in taxpayer's conclusion that when the department
audited and disagreed with taxpayer's position in the claim
for refund, it was somehow prevented from saying, in effect,
"give us back the money we tentatively paid to you." That is
functionally no different than when the department, under
subsection (3), says to a taxpayer: "give us some money." The
only difference is that the demand for money can only occur
in one instance under subsection (3)—alternative (5)—
whereas it can occur in three instances under subsection
(8)—alternatives (3), (4), and (5). However, that difference
is produced solely by the fact that under subsection (8) the
department has already made a payment before reviewing
the matter. Having done that, if the department determines
that some or all of the money should be returned, it fits the
definition of "deficiency" to say that a notice of deficiency
may be used.

In this case, if the department had not paid out the
requested refund before audit, it would have performed its
audit and concluded that no amount of the request should
be granted. Under subsection (3), it would then have noti-
fied taxpayer of that conclusion. Following that, taxpayer
would have had the same administrative conference rights
it exhausted after receiving the notice of deficiency. Then,

consistent with the department's rejection of taxpayer's position, the department would have, in the words of subsection (4)(b), issued a "notice of refund denial."

In the case before the court, the department, having made the payment before audit or examination, and having determined that the entire amount was due back, took the following action on September 26, 2012: It sent taxpayer a notice of a deficiency in the amount previously claimed by, and paid to, taxpayer. It also stated that it disagreed with taxpayer's claim and, "Therefore, the amended returns are denied and the refunds are not allowable." Recall that an amended return showing an overpayment is a "claim for refund." ORS 305.270(2). Accordingly, what the department notified taxpayer of was a "refund denial." That is precisely the notice the department would have given taxpayer if it had audited the refund claim first and taken the action it took. ORS 305.270(4)(b) explicitly provides for notices of refund denial. However, with the refund amount then being in the hands of taxpayer, there was, in the view of the department, "an inadequate amount" in respect of taxpayer's obligations to the state. There was a deficiency.

Absent some textual or contextual reason to the contrary (and none is described by the taxpayer in its arguments) subsection (8) should not be read as being unavailable to the department when, after an audit, it concludes that it must assert that a taxpayer owes money to it and says so by notifying a taxpayer of its position in a notice of deficiency. In fact, the text and context of subsection (8) supports two conclusions: (1) a notice of deficiency is a subset of the category of notices of proposed adjustment; and (2) the department was authorized, and perhaps required, to issue a notice of deficiency in this case.

Recall, subsection (8) specifies that, after its audit, the department is to "send the notice of proposed adjustment provided for in subsection (3) of this section." It is true that the provisions of subsection (3) do not explicitly state that the notice of proposed adjustment may be denominated a "notice of deficiency" when the department seeks money *from* a taxpayer. On this fact taxpayer appears to rest most, if not all, of its argument. However, only a hyper-formalistic

approach could construe subsection (3), and therefore subsection (8), so as to find fault with sending a taxpayer a document entitled "notice of deficiency" when the department is in fact telling a taxpayer that the department demands it to pay under subsection (3), or pay back under subsection (8), money in the hands of a taxpayer. A consideration of statutory context requires the conclusion that subsection (3) and, by cross-reference subsection (8), permit, if they do not require, the issuance of a notice of deficiency. Stated differently, a notice of deficiency is a subset of the set comprising notices of proposed adjustment.

Under subsection (3), when the department concludes that a deficiency exists, the department is required to notify the taxpayer of the "finding of a deficiency."[12] Other context to be considered in connection with understanding subsection (3) indicates that a "notice of deficiency" is either allowed, or required, by subsection (3) when a claim for refund in fact "boomerangs" into assertion by the department of a deficiency.

The first contextual element is found in ORS 305.270(4) (subsection (4)). Subsection (4) sets forth procedures to be followed when the department does anything other than refund the amount requested under subsection (3). Subparagraph (b) of subsection (4) contemplates a conference, if requested, between the department and a taxpayer. Following a requested conference, subparagraph (b), in relevant part, states:

> "If the conference officer determines that a deficiency exists, the department shall issue a *notice of assessment*."

(Emphasis supplied.)

To understand this reference to a "notice of assessment," related context found in ORS 305.265 must be considered. ORS 305.265 provides for the procedure in cases of a deficiency. Under ORS 305.265, notices of assessment

---

[12] As further discussed below, the court uses the term "hyper-formalistic" to describe a construction that relies solely upon an asserted difference between "adjustment" and "deficiency." As will be seen, the use of the word "deficiency" in the heading of the notice results in no substantive change in the time period within which the department may act, the amount at risk in any department action or the procedures available to a taxpayer to contest department action.

come *after, and only after, a notice of deficiency* has been given and an opportunity has been afforded the taxpayer for an administrative hearing on the matter.[13] As noted above, a notice of deficiency is the beginning of a process. The administrative end of that process comes with the issuance by the department of a notice of assessment. Accordingly, when subparagraph (b) of subsection (4) provides for a post-conference notice of assessment, it logically follows that the pre-conference notice is a "notice of deficiency."

ORS 305.270(6) (subsection (6)) also provides valuable, and perhaps determinative, context. Subsection (6) applies when "no conference is requested, and *the notice of proposed adjustment has asserted a deficiency*." (Emphasis added.) In that case, the department considers any objections made other than in a conference and then is to pay any refund due or "assess any deficiency and mail a notice thereof within one year from the date of the *notice of deficiency* \*\*\*." (Emphasis supplied.)

There can be no question that the date referred to in the foregoing as "the date of the notice of deficiency" is the date of the notice issued under subsection (3) that begins the process of potential administrative and judicial review of the department's assertion that money is due. In addition, the first emphasized text in the foregoing quotation demonstrates that the legislature contemplated that a notice of proposed "adjustment" can assert a "deficiency." Accordingly, subsection (6) of ORS 305.270 further confirms that a "notice of proposed adjustment" under subsection (3) can, or perhaps even must, be a notice of deficiency.[14]

---

[13] ORS 314.440 provides one exception in the case of so-called "jeopardy." That special exception does not apply here and is the "exception that proves the rule" that notice of proposed action is to precede department action.

[14] In *Simson v. Dept. of Rev.*, 15 OTR 89 (2000), this court held that subsection (3) is to be read as calling for issuance of a notice of deficiency when a review of a claim for refund leads to assertion of a deficiency. The court concluded that in such events a document entitled Notice of Proposed Adjustment did not fit with subsection (3), read in the context of ORS 305.265, a statute specifically addressing deficiencies. The court reasoned that given the provisions of subsection (3) and ORS 305.265, the department should not be put in a position of issuing both a notice of proposed adjustment and, to be safe, a notice of deficiency. That result was unacceptable as it would be wasteful and potentially confusing to taxpayers. Rather, *Simson* stands for the proposition that when, in response to a refund claim, the department is seeking *money from the taxpayer*, a notice of deficiency

The foregoing analysis leads to only one conclusion: The notice contemplated by subsection (3), in cases where the department has made no prior payment, can or must be a notice of deficiency. Accordingly, in making a cross-reference in subsection (8) to subsection (3), the legislature allowed or required the use of a notice of deficiency when a taxpayer has in its hands money the department asserts is due.

Taxpayer here goes no further than making an argument regarding a label on a document issued by the department. Indeed, it cannot do more because, as will be discussed below, there is no substantive difference, in the circumstance under consideration, between use of a notice of proposed adjustment and a notice of deficiency. In the context of subsection (8), a notice of deficiency is a permitted, if not required, form of notice of proposed adjustment. Taxpayers are in exactly the same substantive and procedural position.

As recognized under both ORS 305.265 and ORS 305.270, taxpayers are entitled to be told in the notice of the basis of the department's action. Taxpayer in this case was then entitled to the same type of administrative action and appeal from any conclusion of the department after that hearing. None of that is changed by the title of the notice. Taxpayer's arguments otherwise are not well taken.

Taxpayer argues that the foregoing construction, allowing notices of deficiency to be issued under subsection (8),

---

should be issued. The court adheres to this conclusion and concludes it is applicable in cases subject to subsection (8) when the department seeks *money back from the taxpayer*.

Taxpayer also cites the decisions in *Tektronix, Inc. v. Dept. of Rev.*, 20 OTR 468 (2012), *aff'd*, 354 Or 531, 316 P3d 276 (2013), and *Scott v. Dept. of Rev.*, TC-MD 020886C, 2003 WL 21241326 (2003), in an attempt to establish that a notice of deficiency is not a subset of the category of notices of proposed adjustment for purposes of subsection (8). The language cited by taxpayer from *Tektronix* as to distinctions between notices of assessment and notices of proposed adjustment does not address whether, for purposes of subsection (8), a notice of deficiency is a type or subset of the category of notices of proposed adjustments in the special circumstances covered by subsection (8). *Scott* is a case without precedential value. It is also not persuasive in its reasoning. It did not involve the special circumstances covered by subsection (8). It involved the issuance by the department of a notice of refund denial—a final administrative step—without an earlier notice of proposed action allowing for the taxpayer there to have the benefit of the statutorily mandated administrative hearing required by ORS 305.270(4).

produces several problems indicating that the construction is erroneous. To these arguments the court now turns.

### e. Does issuance of a "notice of deficiency" disrupt statutory time limitations?

Taxpayer argues that reading subsections (8) and (3) as indicated above will disrupt other statutory provisions imposed on the department. Taxpayer observes:

"ORS 305.270(3) is a procedural statute, not a limitations statute. Nothing in ORS 305.270(3) provides for or extends the limitations period for any Department action."

Taxpayer then goes on to argue that

"if ORS 305.270(3) were to be read to permit the Department to issue a notice of deficiency in response to *any refund claim* with no time limitations, the Department could determine a deficiency years after the statute of limitations for issuing a notice of deficiency under ORS 314.410 had expired."

(Emphasis added.)

Taxpayer then observes that this perceived evil of allowing the issuance of a notice of deficiency under subsection (8) can be avoided by requiring the department to issue a "notice of proposed refund adjustment." (Underscoring in original.)

The court will address these assertions in the order quoted.

First, with respect to the first excerpt quoted above, neither the department nor the court disagrees with the observation that subsection (3) is a procedural statute that does not specify a statute of limitations. That is true. However, as to limitations periods, the statute of importance in this case is subsection (8). That subsection does fix a statute of limitations, one combining the basic statutes of limitation in ORS 314.410 or ORS 314.415 and a one year extension. And, of course, in doing so it makes a cross-reference to subsection (3). However, that cross-reference relates to the type of notice to be sent—not to the time period within which it must be sent. The court has concluded that a notice of deficiency is a form of notice permitted under subsection (8)

in cases where the department seeks money from a tax-payer. That conclusion does not disrupt the time limitations found in subsection (8).

Second, as to the second excerpt quoted above, the issue before the court is not what the department can do with respect to *any* refund claim. The issue here is what the department can do after it refunds an amount claimed as a refund without auditing or examining the refund claim. What the department can or cannot do in response to *other* refund claims is not before the court. However, subsection (8) states its own time limitations that are binding on the department when it issues the permitted notice of deficiency. As will be seen below, these time limitations in effect create limitations on the amount that the department may demand from a taxpayer.

Third, as to the third excerpt quoted above, there is no need to, and the court does not have the power to, add a word to the statute governing this case. The court has concluded that the phrase "notice of proposed adjustment" includes as a subset, when applicable, a notice of deficiency. The statute then applies without textual alteration.

> f.   Does subsection (8) permit issuance of a "notice of deficiency": amount of deficiency

Taxpayer also asserts that

"[i]f ORS 305.270(8) authorized the Department to deter-mine a deficiency, there would [be] no limit on the amount of the deficiency the Department could determine. Nothing in ORS 305.270(8) or ORS 305.270(3) limits the amount of a 'deficiency.'"

Here again taxpayer reaches a conclusion that is not consistent with the relevant statutes, *read as a whole*. It is true that subsection (3) and subsection (8) do not, *by themselves*, provide a limit on the amount of deficiency that may be asserted by the department. However, when the statutes of limitation on department action are taken into account, limitations emerge.

Taxpayer's fear of a proposed deficiency without limit as to amount would be justified if this were a case

where the department made no payment of the claimed amount under subsection (8). In that case, subsection (3) would apply and it states no limit on the level of deficiency that may be proposed by the department.[15] Of course, this is not the situation with which the parties and the court are presented in this action.

When, as here, the subsection (8) process has been instituted, the amount of proposed deficiency is limited, or not, depending on *when* the notice of proposed deficiency is issued.[16] The court now considers the possible combinations of events and time limitation provisions and how they interact.

If the department pursues the subsection (8) process but does not get its notice of deficiency issued within the extended time provided for in subsection (8), it will not be able to assess any deficiency. As to the original return itself, it will be barred by the statute of limitations in ORS 314.410. As to any matter related to the claim for refund, it will be barred by the terms of ORS 314.410 and subsection (8).

If the notice of deficiency, that is the notice of department conclusions after examination and audit, is issued *before* the extended time provided for in subsection (8) expires, but *after* the basic statute of limitations stated in ORS 314.410 has run, the department may only reduce the amount of the previously paid refund to which, in its view, the taxpayer is entitled. Any assertion of a deficiency beyond that would be time-barred by operation of the basic statute of limitations. They would not arise from an audit or examination of that to which the provisions of subsection (8) relate—the claim for refund. Subsection (8) extends the basic statute of limitations only for examination of the claim for

---

[15] Although no limit exists on the amount of a deficiency, there is a time limit under ORS 314.410 within which the department must act, unless that period of time is extended by agreement or otherwise outside of subsection (8).

[16] The court refers to "proposed" deficiency to remind the reader that, under Oregon law, a "notice of deficiency" is, in fact, only a proposal, or assertion, by the department as to the existence of a deficiency. The notice does not amount to an assessment. An assessment may be made only after further procedural steps specified in ORS 305.265 and ORS 305.270(4) and following subsections.

refund—not the return as a whole.[17] That rule is consistent with the statutory language and with what the department representatives told the legislature.[18]

However, it is also possible that both a claim for refund and a payment under subsection (8) could occur before, and perhaps *well before*, the basic statute of limitations under ORS 314.410, three years, has run.[19] In that case, nothing in the text of subsection (8) would shorten the basic limitations period and the department could act both with respect to the claim for refund and any other matters contained in the return. In that case, there would be no limit on what the department could assert as a deficiency. However, that result occurs as a result of the *timing* of actions by a taxpayer and the department and not because of the *title* on the document issued by the department.

As can be seen in the foregoing analysis, taxpayer's fears of unlimited deficiencies arising from the department construction of subsection (8) are unfounded.

2.  *Does subsection (8) permit a notice of deficiency: implication of phrase "notice of proposed adjustment" in subsection (8)*

Taxpayer also argues that if the interpretation of subsection (8) discussed above is correct, all department actions, other than allowing a taxpayer to keep all money originally paid to it, would result in a deficiency—that is a demand that money be paid back to it. The court understands taxpayer to then rhetorically ask: "Why did the legislature use the phrase 'notice of proposed adjustment' in subsection (8) if the only notice that could be issued would be one of a deficiency?" However, the premise of taxpayer's

---

[17] By rule, the department has stated that in such cases it will not assert deficiencies beyond the amount previously refunded. *See* OAR 150-305-0238.

[18] Stipulated Exhibit 10 at page 10 contains a discussion of the provisions of subsection (8). In that discussion, the department's representative explains that in situations covered by subsection (8) when the statute of limitations is extended one more year, "it would only allow us to collect the amount that was an error. It would not open up the whole return."

[19] As will be discussed below, in some cases the basic statute of limitations under ORS 314.415 for *refunds* could also be implicated. However, the court will now only address the basic limitations period for deficiencies.

argument is false. The department's position does not result in there only ever being a deficiency asserted by it under subsection (8) when it does not allow a taxpayer to keep the full amount of money tentatively refunded at an earlier date.

This is because, at least for one reason, subsection (8) does not address only ORS 314.410. It also addresses, and meaning must be given to, its reference to ORS 314.415.[20] That statute speaks to instances in which the department determines, pursuant to ORS 305.270, that the amount of tax due is *less* than the amount theretofore paid. ORS 314.415 also provides a basic limitations period within which the department may "make or allow" a refund.

It follows that, within the time extension provided by subsection (8), the department could, in examining a refund claim and the facts and law on which the claim is based, conclude that a refund greater than that claimed is due to a taxpayer.[21] In that case, contrary to taxpayer's argument, the department would issue a notice of proposed adjustment: *an upward adjustment*. It would, in fact, be one of the types of proposed adjustment described in the cross-referenced subsection (3)—a proposed adjustment that would *increase* the amount of refund.

There are, therefore, good reasons for the legislature to have used the phrase "notice of proposed adjustment" in subsection (8). The court's construction of that phrase as including a subset for notices of deficiency does not render the phrase superfluous. It has meaning, at least, in the event that the department, after audit or examination, determines that a refund may be due.

---

[20] Taxpayer acknowledges in its brief the reference to ORS 314.415 but never grapples with the significance of the reference.

[21] Notice that the obligation to refund excess amounts held by the department is contained in ORS 314.415 as well as in ORS 305.270, to which ORS 314.415 makes reference. The situation described in the text to which this footnote is appended is different from the facts of the current dispute between taxpayer and the department. In the text, an additional refund is a result of, for example, facts or law discovered in an audit or examination *helpful* to a taxpayer. In the case before the court, as noted above, the additional amount paid to taxpayer resulted from the department looking at its own records rather than performing an audit or examination of the facts and law that were the basis of the refund claim.

### 3.   *Subsection (8) and subsection (3)*

Subsections (8) and (3) are statutorily linked. The only difference stated in the statute between the two is that in cases where subsection (3) applies, the department has made no "preliminary" or "tentative" refund payment. That being the case, one should expect that the positions of the parties and the choices available to the department in response to a claim for refund should be substantively the same, except for differences generated by the "preliminary" payment. And, as will now be discussed, that is the case.

A construction of subsection (8) that allows the actions taken by the department with respect to taxpayer is not a construction that produces departures from the time limitations and amount limitations found in the statutes generally. Furthermore, the cross-reference in subsection (8) to subsection (3) contemplates, if it does not require, that a notice of deficiency may be used. The extended arguments of taxpayer to the contrary are not well taken.

### 4.   *Conclusion as to application of subsection (8)*

Subsection (8) applies in this case. The actions of the department relating to the notice of deficiency were timely and procedurally valid. The court now turns to the assertion of the department that taxpayer's substantive claim for refund must be limited to the modest amounts paid by taxpayer to the department within two years of the filing of the taxpayer's claim for refund.

### B.   *Was the second amended return timely filed?*

The remaining issue is whether or not taxpayer's second amended return and claim for refund for 2007 was timely filed. If it was timely filed, this case will continue to consider the full amount of the claim for refund made by taxpayer and effectively denied by the department. However, if the claim was not timely filed, taxpayer is, at most, entitled to amounts paid within two years of the date the claim was filed.[22]

---

[22]  The period for timely filing is governed by ORS 305.270 and ORS 314.415(2).

ORS 305.270(1) permits a refund if "a person files a claim for refund * * * within the period specified in subsection (2) of this section." That subsection (2) further provides that the "claim shall be filed within the period specified in ORS 314.415(2)." ORS 314.415(2) sets forth two periods of time. The first is "three years from the time *the return was filed*." ORS 314.415(2)(a). (Emphasis added.) The second time period is "two years from the time the tax (or a portion of the tax) was paid." ORS 314.415(2)(a). Finally, ORS 314.415(2)(f) provides that "The amount of the refund, exclusive of interest on the refund, may not exceed the portion of the tax paid during the period preceding the filing of the claim."

In this case, taxpayer sought to have its claim for refund to be paid out of more than just amounts paid within two years of the time it filed its claim for refund. Taxpayer sought to have its claim paid out of all amounts it had paid to the department in respect of its 2007 return. Therefore, references in this order to "timely filed" refer only to the first time limit—"three years from the time the return was filed."

The record establishes that physical filing of taxpayer's original return for 2007 occurred no later than October 3, 2011 (hereafter October 3, 2011). The record also establishes that the physical filing of taxpayer's claim for refund for the 2007 year occurred no earlier than October 14, 2008 (hereafter October 14, 2008).

The department concedes that taxpayer is not barred from proceeding to the substantive issues related to its claim for refund for a very limited amount paid by it within two years of the filing of its claim for refund. The substance of the dispute at this stage of the case is whether the time limit on refunds applies to the other, much larger, amounts claimed by taxpayer paid more than two years before the filing of taxpayer's claim for refund. This, in turn depends not on the date of filing of that claim, but rather on *when taxpayer's return for 2007 was filed*.

Because timely filing of a claim for refund is, under ORS 305.270, a condition to the obligation of the department to pay any refund, taxpayer must establish a legal

basis for its claim within which the uncontested facts can fit. ORS 40.105 ("A party has the burden of persuasion as to each fact the existence or nonexistence of which the law declares essential to the claim for relief or defense the party is asserting."). Stated differently, unless taxpayer can establish that there is some legal basis for doing otherwise, its claim for most of the refund it seeks is barred for the simple reason that October 14, 2011, is more than three years after October 3, 2008, the date on which it physically filed its return for 2007.

The dispute between the parties is when the original return for the 2007 year was "filed" for purposes of measuring the three year period of time set out in ORS 305.270(2) and ORS 314.415(2). The department's position is simple and clear: the return was filed no later than October 3, 2008—the date on which it was physically filed. The department argues that even though the return could have been filed as late as October 15, 2008, without penalty, the actual filing date governs for purposes of measuring the three year period specified in ORS 305.270 and ORS 314.415. Using that measurement, the filing of the claim for refund was untimely except in respect of a very limited amount paid by taxpayer within two years of October 3, 2011.

As the court understands it, the argument of taxpayer involves the following sequential steps:

(1)   ORS 317.504 provides that a "return filed before the last day prescribed by law for the filing thereof shall be considered as filed on the last day."[23]

(2)   ORS 314.385(1)(b) (subparagraph (b)) provides that for corporations: "returns shall be filed with the department on or before the 15th day of the month following the due date of the corresponding federal return for the tax year, as *prescribed* under the Internal Revenue

---

[23]  ORS 317.504 provides:

"A return filed before the last day prescribed by law for the filing thereof shall be considered as filed on the last day. An advance payment of any portion of the tax made at the time the return was filed shall be considered as made on the last day prescribed by law for the payment of the tax. The last day prescribed by law for filing the return or paying the tax shall be determined without regard to any extension of time granted the taxpayer by the Department of Revenue."

Code and the regulations adopted pursuant thereto." (Emphasis added.)[24]

(3) Taxpayer received a federal extension of time within which to file its 2007 federal tax return. The extension was until September 15, 2008. Taxpayer argues that this extension must be taken into account in determining the date "prescribed" for filing under subparagraph (b). Taxpayer then argues that, in accordance with subparagraph (b), the date prescribed for filing in Oregon is therefore one month later— October 15, 2008.

(4) The provisions of subparagraph (b), as read pursuant to step (3), also determines, for purposes of applying ORS 317.504, "the last day *prescribed* by law" for the filing of a corporate return. (Emphasis added.) Therefore, the filing of taxpayer's 2007 return on October 3, 2008, is considered as filed on the "last day prescribed by law," that is, on October 15, 2008.

(5) No extension was "allowed" by the department under ORS 314.385(1)(c) (subparagraph (c)). Taxpayer argues that any such extension was automatic under the department's rules given the federal extension and therefore not "allowed." Further, even if an

---

[24] ORS 314.385(1) provides,

"(a) For purposes of ORS chapter 316, returns shall be filed with the Department of Revenue on or before the due date of the corresponding federal return for the tax year as prescribed under the Internal Revenue Code and the regulations adopted pursuant thereto, except that the final return of a decedent shall be filed at any time following the death of the decedent, to and including the 15th day of the fourth month after expiration of the regular tax year of the decedent.

"(b) For purposes of ORS chapters 317 and 318, returns shall be filed with the department on or before the 15th day of the month following the due date of the corresponding federal return for the tax year, as prescribed under the Internal Revenue Code and the regulations adopted pursuant thereto.

"(c) The department may allow further time for filing returns equal in length to the extension periods allowed under the Internal Revenue Code and its regulations.

"(d) If no return is required to be filed for federal income tax purposes, the due date or extension period for a return shall be the same as the due date, or extension period, would have been if the taxpayer had been required to file a return for federal income tax purposes for the tax year. However, the due date for returns filed for purposes of ORS chapter 317 or 318 shall be on or before the 15th day of the month following what would have been the federal return due date for the tax year."

extension was "allowed" by the department under sub-paragraph (c), that action did not involve, in the words of the last sentence of ORS 317.504, an extension "granted" by the department. Taxpayer argues that, for each of these reasons, the last sentence of ORS 317.504 does not apply. That being the case, nothing in that last sentence of ORS 317.504 disturbs, in the view of tax-payer, the conclusion arrived at in step (4)—the last day "prescribed" for filing was October 15, 2008.

(6)   The date taxpayer filed its claim for refund, October 14, 2011, was less than three years from October 15, 2008, the time it is "considered" to have filed its return under ORS 317.504. Further, no extension granted by the department affects that conclusion. Therefore the filing of the claim for refund was timely and allows full recovery of amounts previously paid to the department.

A matter of fact established by the record in this case is that taxpayer applied for and did receive an exten-sion of time—until October 15, 2008—within which to file its federal return. That extension is provided for by section 6081 of the Internal Revenue Code (IRC) and regulations promulgated under that section.[25, 26]

---

[25] IRC 6081 provides, in relevant part:

"(a) General rule.   The Secretary may grant a reasonable extension of time for filing any return, declaration, statement, or other document required by this title or by regulations. Except in the case of taxpayers who are abroad, no such extension shall be for more than 6 months.

"(b) Automatic extension for corporation income tax returns.   An exten-sion of 6 months for the filing of the return of income taxes imposed by sub-title A shall be allowed any corporation if, in such manner and at such time as the Secretary may by regulations prescribe, there is filed on behalf of such corporation the form prescribed by the Secretary, and if such corporation pays, on or before the date prescribed for payment of the tax, the amount properly estimated as its tax; but this extension may be terminated at any time by the Secretary by mailing to the taxpayer notice of such termination at least 10 days prior to the date for termination fixed in such notice. In the case of any return for a taxable year of a C corporation which ends on December 31 and begins before January 1, 2026, the first sentence of this subsection shall be applied by substituting '5 months' for '6 months.' In the case of any return for a taxable year of a C corporation which ends on June 30 and begins before January 1, 2026, the first sentence of this subsection shall be applied by substituting '7 months' for '6 months.'"

[26]   Treasury Regulation 1.6081-3 was amended in 2008, but the court consid-ers the 2005 version of Treasury Regulation 1.6081-3, as modified by Treasury Regulation 1.6081-3T, to apply to this case for the year 2007. Regardless of

Pursuant to subparagraph (c) and rules promulgated by the department, taxpayer was also the beneficiary of an extension of time within which to file its Oregon return for 2007—an extension that permitted filing of its original return to occur on or before October 15, 2008, without exposure to penalty under ORS 314.400 for failure to timely file a return.[27]

---

which version is considered, it does not appear that the language pertinent to this case—the language emphasized below—has materially changed. Treasury Regulation 1.6081-3 (2005), which was issued under IRC 6081, provides, in relevant part:

"(a) *In general.* A corporation or an affiliated group of corporations filing a consolidated return will be allowed an automatic 6-month extension of time to file its income tax return *after the date prescribed for filing the return* if the following requirements are met:

"(1) [An application must be submitted on Form 7004, 'Application for Automatic 6-Month Extension of Time to File Certain Business Income Tax, Information, and Other Returns,' or in any other manner as may be prescribed by the Commissioner. TR 1.6081-3T.]

"(2) The application must be filed *on or before the date prescribed for the filing of the return of the corporation* (or the consolidated return of the affiliated group of corporations) with the Internal Revenue Service office designated in the application's instructions.

"(3) The corporation (or affiliated group of corporations filing a consolidated return) must remit the amount of the properly estimated unpaid tax liability on or before the date prescribed for payment.

"(4) The application must include a statement listing the name and address of each member of the affiliated group if the affiliate group will file a consolidated return."

TD 9163, 69 FR 70548, Dec 7, 2004, as amended by TD 9229, 70 FR 67359, Nov 7, 2005 (emphases added).

[27] ORS 314.385(1)(c) provides, "The department may allow further time for filing returns equal in length to the extension periods allowed under the Internal Revenue Code and its regulations."

OAR 150-314-0167 provides:

"(1) If a taxpayer cannot file a return within the prescribed time, the department may grant the taxpayer an extension of time for filing but this does not extend the time for payment of the tax.

"(2) Procedure when a federal extension is granted.

"(a) The department will grant extension of time to file an Oregon return if the taxpayer has obtained an extension to file the federal return from the Internal Revenue Service. The taxpayer does not need to request an Oregon extension. The taxpayer must attach a copy of an approved federal extension or a filed automatic federal extension request under Internal Revenue Code (IRC) section 6081(b) to the Oregon return in accordance with current tax return instructions to serve as evidence of an Oregon extension.

"(b) An automatic extension of time for filing a return does not relieve the taxpayer of the responsibility to pay estimated tax or eliminate interest

The court will now address what the court considers to be the two decisive, or potentially decisive, steps in the argument of taxpayer set forth above. These are (1) the use of IRC 6081 and related regulations as defining the "date prescribed for filing," as that phrase is used in subparagraph (b) and therefore the last day for filing under ORS 317.504; and (2) the argument that the department did not grant any extension to taxpayer.

1.  *Does IRC section 6081 or regulations issued thereunder define "the last day prescribed for filing" for subparagraph (b) and ORS 317.504?*

Critical steps in the argument of taxpayer are its assertions, in steps (3) and (4), that in construing subparagraph (b), the *last day prescribed for filing* is defined by application of IRC section 6081. Taxpayer argues that this construction of subparagraph (b) is then used in determining application of ORS 317.504. In its Omnibus Brief taxpayer states:

"Under ORS 314.385, the due date on an Oregon return is tied to the due date of the taxpayer's federal income tax return 'as prescribed under the Internal Revenue

---

charges for failure to pay estimated tax. An extension also does not relieve the taxpayer of a late payment penalty provided under ORS 314.400, except when the requirements of section (3) of OAR 150-314-0195 are met.

"(c) The Oregon extension is for the same length of time as the federal extension. If the Internal Revenue Service denies the taxpayer's extension request, but grants the taxpayer a period of time from the date of the denial in which to file the return, the department will grant the taxpayer an equal period of time if a copy of the denied extension request is attached to the Oregon return at the time of filing.

"(3) Procedure for requesting an extension for Oregon only.

"(a) An individual may request an extension of time for Oregon only by completing and filing the appropriate Oregon form. The taxpayer must file the extension request and payment with the department on or before the original due date of the associated return.

"(b) A corporation may request an extension of time for Oregon only by writing "For Oregon Only" on the top of a federal extension form, filling out the form with Oregon tax information, and attaching it to the Oregon return when it is filed. An extension payment must be sent to the department on or before the original due date of the return accompanied by the appropriate Oregon form.

"(c) Insurance companies filing federal income tax returns on a fiscal year basis must request a separate extension for Oregon under subsection (b) of this section. The Oregon extension is for the same length of time that would be allowed if the insurance company filed a calendar year federal return and applied for a federal extension."

> Code *and the regulations* adopted pursuant thereto.'
> (Emphasis added.) Under applicable federal treasury reg-
> ulations, Vesta's 2007 federal income tax return was due
> September 15, 2008. Treas. Reg. section 1.6081-3(a)(1).
> Pursuant to ORS 314.385, the Oregon return was therefore
> due on October 15, 2008. As the refund claim was filed early
> (on October 3, 2008), the return was deemed, under ORS
> 317.504, to have been filed on the date it was due, October 15,
> 2008."

The quoted language is a statement of position on which taxpayer must prevail. Importantly, it demonstrates that taxpayer accepts that subparagraph (b), and not subparagraph (c), "prescribes" the day for filing of a return. Although taxpayer, in the quoted language, carefully avoids ever specifying what subsection or subparagraph in ORS 314.385 should be consulted, there is no doubt that taxpayer is making reference to subparagraph (b). Why? Because only that subparagraph contains the language connecting the Oregon filing date to, as taxpayer describes it, "the due date of the taxpayer's federal income tax return 'as prescribed under the Internal Revenue Code and the regulations adopted pursuant thereto.'"

Additionally, it is only subparagraph (b) that calls for the addition of one month to the federal due date. Without reference to subparagraph (b) and its addition of one month to the time calculation, taxpayer could not reach the conclusion that, in taxpayer's words, "the Oregon return was therefore due on October 15, 2008." Taxpayer's argument, even if otherwise valid, would, without application of subparagraph (b), produce a required filing date of September 15, 2008, the federal due date after applying federal extensions. In that event, ORS 317.504, the statute on which taxpayer relies would have no application because it only addresses filings made *before* the last day prescribed for filing. September 15, 2008, is not before October 3, 2008. Taxpayer's filing, made on October 3, 2008, can only occur *before* October 15, 2008, if the one month addition allowed by subparagraph (b) is made.

Having accepted, as it must, that the starting point of the proper analysis is subparagraph (b), taxpayer then takes a detour that, while it leads to taxpayer's goal, is without justification in the text and context of subparagraph (b)

and the federal regulations on which taxpayer relies. The detour, as shown in the quoted language above from its Omnibus Brief, is taxpayer's side trip through IRC section 6081 and the regulations promulgated pursuant thereto and then back to subparagraph (b).

Taxpayer's detour into Treas Reg 1.6081-(3)(a) (the 6081 regulation)[28] and back to subparagraph (b) is unwarranted and erroneous for a number of reasons.

First, subparagraph (b) speaks only to the required or "prescribed" day for filing a corporate return when directing the reader to federal law. However, neither IRC section 6081 nor related regulations prescribe a filing date for a return.

Indeed, the text of the 6081 regulation relied upon by taxpayer itself demonstrates conclusively that the 6081 regulation *does not* prescribe a date for filing. The critical text is found in subparagraphs (a), (a)(1) (as modified by TR 1-6081-3T), and (a)(2) of the 6081 regulation, providing, in relevant part:

"(a)   In general.   A corporation *** will be allowed an automatic 6-month extension of time to file its income tax return *after the date prescribed for filing* the return if the following requirements are met:

"(1)   An application must be submitted ***.

"(2)   The application *must be filed on or before the date prescribed for the filing* of the return of the corporation ***."

(Emphases added.)

These provisions require the conclusion that the "date prescribed by law for filing" is a date that *precedes* the application for an extended date and therefore necessarily precedes that extended date itself. Stated differently, the extended due date is not a date prescribed for filing.

Taxpayer's argument, critical to its position in this case, is premised on the conclusion that the 6081 regulation made September 15, 2008, a date six months after the federal return due date, the "date prescribed by law for filing." However the provisions of the very regulation invoked by

---

[28]  The text of this regulation is found above, *see* 22 OTR at 570 n 26.

taxpayer establish that September 15, 2008, cannot be considered the "date prescribed for filing." Rather, March 15, 2008, was the date prescribed for filing under federal law. Applying the provisions of subparagraph (b), the Oregon date prescribed for filing was therefore April 15, 2008.

Although the foregoing fault in taxpayer's argument is, on its own, fatal to taxpayer's position, there are several other aspects of text and context that also show the erroneous character of taxpayer's provision on timely filing.

The next indication of the erroneous nature of taxpayer's federal law detour is the text of subparagraph (c) and the relationship of subparagraphs (b) and (c). Subparagraph (c) is a specific provision, *separate* from subparagraph (b), which addresses filing extensions. Taxpayer never grapples with the structural fact that ORS 314.385 has provisions on due date separate from provisions on extension of date for filing. Yet, this fact also indicates that the prescribed filing date and the availability of extensions are two separate statutory concepts.

Not only are filing due dates and extensions addressed separately in Oregon law, they are also separately addressed in the federal statutes and regulations to which ORS 314.385 makes reference.[29] Taxpayer's argument ignores this fact. IRC section 6072 prescribes a date for filing, similar to, and indeed linked to, the subparagraph (b) provisions on filing due date. IRC section 6081 only addresses the subject of extensions, just as subparagraph (c) in Oregon law only addresses extensions. The pattern is one of parallel structure in federal and Oregon law, a structure in which a distinction exists between prescribed filing dates for returns and extensions.

Notwithstanding this parallel structural feature in federal and Oregon law, taxpayer argues that the extension regulations promulgated under IRC section 6081 are, somehow, to apply in determining the meaning of subparagraph (b), a statute dealing only with due dates for filing returns. In

---

[29] Subparagraph (b), as discussed, specifically incorporates federal law on the date prescribed for filing. Subparagraph (c) does not make a specific incorporation but does limit the department's choice of time periods if the department allows an extension of time for filing.

making this argument, taxpayer crisscrosses the otherwise parallel legislative strands found in Oregon and federal law—parallel but not intersecting lines: one for due date and a separate one for extensions. Taxpayer makes only one argument to address the objection made by the department that subparagraph (b) must be read as referring only to IRC section 6072 and regulations promulgated thereunder.

Taxpayer's argument starts by pointing to the reference in subparagraph (b) to the IRC and "the regulations adopted pursuant thereto." From this base taxpayer then argues that this provision as to regulations justifies reliance upon the 6081 regulation because that regulation is, in fact, a regulation adopted "pursuant to" the IRC. Taxpayer's reasoning is profoundly over-inclusive and ignores several substantial problems.

The over-inclusiveness of taxpayer's argument is obvious. If the only test to be applied in determining which federal regulations to consider in applying subparagraph (b) is whether the regulation was adopted pursuant to the IRC, one would need to scour all regulations related to any section of the IRC to determine which regulations would be considered in applying subparagraph (b). That is simply not the way the regulations under the IRC are promulgated. The court cannot accept taxpayer's argument that this is what the Oregon legislature intended, nor does taxpayer provide the court with any legislative history suggesting the legislature did so intend.

The fact that the regulations under IRC section 6081 are related to the provisions of the IRC is a necessary, but not a sufficient filter for use in determining whether those regulations are referred to in subparagraph (b). Taxpayer's argument is thus over-inclusive in the extreme.

Taxpayer also ignores basic matters that, when considered, answer the question of what regulations the Oregon legislature was referring to in subparagraph (b). The matters relate to the authority of the Treasury Department to promulgate regulations. That authority is limited and defined.

To determine whether Treasury Regulation 1.6081-3 is interpretive or legislative, one need only look at

the adoption statement for the regulation. Those statements show that Treasury Regulation 1.6081-3 is promulgated pursuant to IRC 7805. *See, e.g.*, TD 9229, 70 FR 67358-59, Nov 7, 2005.

IRC 7805(a) provides, "Except where such authority is expressly given by this title to any person other than an officer or employee of the Treasury Department, the Secretary shall prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue."

The Internal Revenue Manual states that regulations issued under IRC 7805(a) are interpretive in nature. IRM 4.10.7.2.3.2 (01/01/2006), available at: https://www.irs.gov/irm/part4/irm_04-010-007#idm140685629178720. Therefore, because Treasury Regulation 1.6081-3 is an interpretive, rather than a legislative or partially legislative rule, it cannot provide more than that which is allowed under IRC 6081. In other words, Treasury Regulation 1.6081-3 cannot be used to interpret IRC 6081 in a way that the statutory language of IRC 6081 would not itself support.

The same is true of Treasury Regulation 1.6072-2. It was issued pursuant to the authority granted by IRC 7805. *See, e.g.*, TD 7896, 48 FR 23818, May 27, 1983. The IRS does, at times, have legislative rule making authority. One example of such authority is found in IRC 6071(a). That section provides, "*When not otherwise provided for by this title*, the Secretary shall by regulations prescribe the time for filing any return, statement, or other document required by this title or by regulations." (Emphasis added.)

But the times for filing corporate tax returns of the type seen in this case and the extensions thereof are provided for by IRC 6072 and IRC 6081. Accordingly, even if the IRS had attempted to issue the Treasury Regulations at issue here under IRC 6071—which it did not—the provisions found in those regulations could not supersede or conflict with the statutory provisions of IRC 6071 and IRC 6081.

The foregoing analysis leads to these conclusions. In adopting subparagraph (b), the Oregon legislature only

incorporated into Oregon law provisions of the IRC dealing with the definition or setting of a required filing date for a return. Therefore, in applying subparagraph (b), use of the language of IRC section 6081, and the interpretive regulations relating to that statute is not authorized. Moreover, even if one were permitted to consult the 6081 regulation, by its own terms it conclusively establishes that the due date for filing a return on extension is a date *after* the date prescribed for filing and *not before* that date.

Provisions of IRC section 6072 and regulations interpreting that section, focused as they are on dates prescribed for filing returns, are the only federal legislation and regulations that may be used in applying subparagraph (b). Application of IRC section 6072 and the interpretive regulations relating to it does not produce a due date under subparagraph (b) of October 15, 2008. Rather, the due date, determined under subparagraph (b), is April 15, 2008.

The ultimate conclusion follows. Under subparagraph (b) "the due date of the corresponding federal return for the tax year, as prescribed under the Internal Revenue Code and the regulations adopted pursuant thereto" was March 15, 2008. That is the due date set out in IRC section 6072. To this date, subparagraph (b) adds one month. Therefore, the due date "prescribed by law" for Oregon purposes was April 15, 2008.

April 15, 2008, is then applied as the "last date prescribed by law for the filing of the return" as that phrase is used in ORS 317.504. However, nothing prevents a taxpayer from filing a return before the last day prescribed by law. ORS 317.504 therefore answers the question of what filing date is to be used when a taxpayer files before the last date prescribed by law. The answer is that, in that case, the filing is considered to be on the last date prescribed by law, April 15. All taxpayers, whether they file on the date prescribed or an earlier date, are considered to have filed on one date. Accordingly, whenever a calculation or provision of law under other statutes refers to the date a return is due or prescribed for filing, all taxpayers are treated the same, whether they file early or not.

See, for example, the provisions of ORS 314.415 (2)(e) regarding calculation of interest on refunds. That statute references "the date when the tax return for that year was filed or was due, whichever is later." Under ORS 317.504, a corporate taxpayer filing a return on April 1 will, for these purposes, be treated as having filed on April 15, the last day prescribed by law for filing. That date, and not April 1, will then be used to calculate interest on any refund. Stated differently, all taxpayers are treated alike and one who files early does not thereby get a greater amount of interest by reason of the early filing.

The court concludes that the time prescribed for filing taxpayer's 2007 return was April 15, 2008. The date was not October 15, 2008.

2.   *Was there an extension granted by the department?*

Given the error in the initial premise of taxpayer that the last day prescribed by law under subparagraph (b) was October 15, 2008, the other point on which taxpayer insists—that the department did not grant an extension to taxpayer in this case—becomes irrelevant. The foregoing construction of ORS 314.385, including the role of subparagraph (b) in applying the first sentence of ORS 317.504, makes the issue of whether the department did or did not grant an extension for filing one that is resolved against taxpayer in all instances.

The court has concluded that the "last day prescribed by law for the filing" was April 15, 2008. Starting with that date, two possibilities exist in applying the last sentence of ORS 317.504.

The first possibility is that the department granted an extension to taxpayer. In that event, the last sentence of ORS 317.504 requires the reader to ignore the extension in applying the first sentence of that statute. The result is that the date prescribed for filing remains April 15, 2008.

The second possibility in this analysis is that the department, as taxpayer argues, did not grant taxpayer an extension of time. In that event, the first sentence of ORS 317.504, as analyzed above, produces the same conclusion: The last day prescribed for filing was April 15, 2008.

Accordingly, in all events, a proper construction of subparagraph (b) and its application to the first sentence of ORS 317.504 renders that statute of no help to taxpayer. Recall that taxpayer needed ORS 317.504 to be applied so as to produce a "prescribed" filing date of October 15, 2008. Only then would its actual filing date of October 3, 2008, be considered advanced to October 15, 2008. And, only then would the actual filing date of its claim for refund, October 14, 2011, have been accomplished within the three year period required under ORS 305.270(2) and ORS 314.415(2). Without the "deemed" filing date extension, taxpayer's claim for refund was untimely, except to the extent that taxpayer had made payments to the department in the two years prior to October 14, 2011.

For all of the foregoing reasons the court rejects the construction urged by taxpayer as to the determination of the filing date under subparagraph (b).

## V.   CONCLUSION

For the reasons set forth above, the motion of taxpayer for summary judgment is denied and the motion of the department is granted. Other issues found in the pleadings and briefs are rendered moot by reason of the foregoing analysis.

There has been some confusion among the parties as to whether tax year 2008 was addressed in the motions for summary judgment. This question will be addressed in a further case management conference to determine if a further decision as to that year is necessary. Now, therefore,

IT IS ORDERED that Plaintiff's Second Motion for Partial Summary Judgment is denied; and

IT IS FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment is granted.